**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT SMITH,

               Plaintiff,

vs.                                   Case No. 3:16-cv-226-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

               Defendant.

_____/

## <u>OPINION AND ORDER</u>[2]

## I.  Status

      Robert Smith ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of severe depression, anxiety, bi-polar disorder, severe fatigue, HIV, "stress management," and high triglycerides. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed July 8, 2016, at 89-90, 100-01, 113, 126, 352. On November 9, 2011, Plaintiff filed an application for DIB and, on November 21, 2011, an application for SSI, alleging an onset disability date of March 25, 2008. Tr. at 89-99 (DIB), 100-10 (SSI).

---

[1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed July 8, 2016; Reference Order (Doc. No. 13), entered July 11, 2016.

Plaintiff's applications were denied initially, see Tr. at 89-99, 111, 141-46 (DIB); 100-110, 112, 147-53 (SSI), and were denied upon reconsideration, see Tr. at 113-25, 139, 171-76 (DIB); 126-38, 140, 177-82 (SSI).

On June 17, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, a medical expert (Dr. Richard Johnson), and a vocational expert ("VE") (Dr. Silvio Reyes).[3] Tr. at 42-64. At the time of the hearing, Plaintiff was fifty-one (51) years old. Tr. at 52. On April 9, 2014, the ALJ held a supplemental hearing, during which he heard testimony from Plaintiff, again represented by counsel, a VE (Ms. Alyssa Brooks), and a medical expert (Dr. Allan Goldstein). Tr. at 65-78. Following the hearings, the ALJ issued a Decision on May 30, 2014, finding Plaintiff not disabled through the date of the Decision. Tr. at 17-34.

On February 17, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 8, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3)[4] by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) "[d]id the [ALJ] adequately evaluate the medical opinions offered by Dr. [Stephanie] Sims, [Plaintiff's] treating psychiatrist?"; (2) "[d]id the [ALJ] adequately evaluate the medical opinions offered by Dr. Mario Cometti, M.D., the

---

[3]     The transcript of the hearing refers to the VE as "Mr. Rays." See Tr. at 42-43. The undersigned believes this is an error. The administrative transcript contains a vocational interrogatory answered by Silvio Reyes, Ph.D., CRC., Tr. at 465-70, and makes no further mention of a VE with the last name "Rays," see generally administrative transcript.

[4]     Although Plaintiff is seeking review of the Commissioner's decision regarding Plaintiff's claim for SSI, Plaintiff's complaint does not state he is seeking review under § 1383(c)(3). Section 1383(c)(3), which incorporates § 405(g), grants the court jurisdiction to review these decisions. See 42 U.S.C. § 1383(c)(3).

Commissioner's expert examining physician?"; and (3) "[d]id the [ALJ] err when he determined that [Plaintiff], absent any consideration of his substance use disorder, did not have any limitations on his residual functional capacity [("RFC")] due to mental impairments?" See Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 16; "Pl.'s Mem."), filed September 9, 2016, at 1, 5-16 (argument as to first issue), 16-22 (argument as to second issue), 22-25 (argument as to third issue). On November 4, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Act "preclude[s] the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001); see 42 U.S.C. § 423(d)(2)(C). Accordingly, if an ALJ "determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the [ALJ] then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.'" Doughty, 245 F.3d at 1279 (quoting 20 C.F.R. § 404.1535). The "key factor" in this materiality determination "is whether the claimant would still be found disabled if he stopped using drugs or alcohol." Id. (citing 20 C.F.R. § 404.1535(b)(1)). "[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination." Id. at 1281.

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 20-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 25, 2008, the alleged onset date." Tr. at 20 (emphasis and citation omitted). At step two, the ALJ found that "[Plaintiff] has the following severe combination of impairments: depression, anxiety, substance addiction disorder (alcohol and marijuana), HIV positive status, asthma, and COPD (Chronic Obstructive Pulmonary Disease), tobacco abuse, alcohol abuse and hepatitis B." Tr. at 20 (emphasis and citations omitted). The ALJ further determined:

> If [Plaintiff] stopped substance use, the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments.

Tr. at 24 (emphasis omitted). According to the ALJ, "Absent substance abuse, the following impairments would still be severe: HIV positive status, asthma, COPD and hepatitis B." Tr. at 25. At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citations omitted); see Tr. at 26.

The ALJ determined that Plaintiff has the following RFC: "[Plaintiff can] perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a) except he would not be able to complete an eight hour workday, a 40 hour workweek or an equivalent schedule on a regular and consistent basis." Tr. at 21 (emphasis omitted). But, the ALJ proceeded to find that "[i]f [Plaintiff] stopped the substance use (alcohol abuse) [Plaintiff] would have the RFC to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except he may not be exposed to fumes or temperature extremes." Tr. at 26.

At step four, the ALJ found "[Plaintiff] is unable to perform [any] past relevant work."[6] Tr. at 23 (emphasis and citations omitted). But, the ALJ also determined that "[i]f [Plaintiff] stopped the substance abuse, [Plaintiff] would be able to perform [the following] past relevant work[:] Sales Person, . . . Accounting Clerk, [and] . . . Traffic Clerk[.]" Tr. at 33.

At step five, after considering Plaintiff's age ("46 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found that, "based on all the impairments, including the substance use disorder, there

---

[6]    Plaintiff has past work as "Material Handler," "Sales Person, General Merchandise," "Accounting Clerk," and "Traffic Clerk." Tr. at 23-24.

are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 24 (emphasis and citations omitted). In regard to Plaintiff's remaining severe impairments absent substance abuse, the ALJ did not make an alternative finding regarding the fifth step. See Tr. at 33-34. The ALJ concluded:

> The substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of th[e D]ecision.

Tr. at 33-34 (emphasis and citations omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077,

1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Applicable Law

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f). With regard to the opinion of a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such an

---

[7]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-7-

opinion.[8] See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

 If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

---

[8]   Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

## V. Discussion

The issues raised by Plaintiff in this appeal are addressed in turn.

### A. Opinion of Treating Psychiatrist

Plaintiff contends the ALJ erred in discounting the opinion of Dr. Sims, Plaintiff's treating psychiatrist. Pl.'s Mem. at 5-16. According to Plaintiff, the reasons given by the ALJ do not amount to the requisite "good cause" for discounting Dr. Sims's opinion and are otherwise unsupported by substantial evidence. <u>See</u> <u>id.</u> at 11-16. Responding, Defendant contends that "[t]he ALJ's assessment of Dr. Simms' [sic] opinion is supported by substantial evidence, including the opinions of Dr. Johnson and the state agency medical consultants,

as well as the objective medical evidence, which showed Plaintiff experienced improved functioning without substance abuse." Def.'s Mem. at 14.

Dr. Sims has treated Plaintiff since at least July 23, 2010 for severe depression, anxiety, and alcohol abuse. See Tr. at 768-70, 936, 990. Plaintiff has appointments with Dr. Sims approximately every one to three months. Tr. at 936, 990. On June 11, 2013 and March 6, 2014, Dr. Sims completed Mental Residual Functional Capacity Questionnaires ("RFC Qnrs." or "questionnaires"). See Tr. at 936-39 (June 2013), 990-993 (March 2014). In both questionnaires, she noted that Plaintiff suffers from: "[r]ecurrent major depression"; "[g]eneralized anxiety disorder"; "[a]lcohol dependence in remission"; "HIV[;] hypertriglyceridemia[; and] male erectile dysfunction." Tr. at 936 (June 2013), 990 (March 2014). In both questionnaires, she reported Plaintiff experiences the following symptoms: "[a]nhedoia or pervasive loss of interest in almost all activities"; "[a]ppetite disturbance with weight change"; "[d]ecreased energy"; "[t]houghts of suicide"; "[f]eelings of guilt or worthlessness"; "[i]mpairment in impulse control"; "[g]eneralized persistent anxiety"; "[m]ood disturbance"; "[d]ifficulty thinking or concentrating"; "[p]ersistent disturbances of mood or affect"; "[s]ubstance dependence - now in remission"; "[e]motional withdrawal or isolation"; and "[s]leep disturbance." Tr. at 936-37 (June 2013), 990-91 (March 2014).

In the June 2013 questionnaire, she assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60, Tr. at 936, and opined that Plaintiff's use of alcohol had no impact on Plaintiff's condition, Tr. at 939. In the March 2014 questionnaire, she did not assign a GAF score, and she did not opine on whether Plaintiff's alcohol use was having an impact on his condition. See Tr. at 990-93. In both questionnaires, she reported Plaintiff is

"not able to perform" several tasks or functions "on a regular, reliable basis." See Tr. at 937-38 (finding Plaintiff is unable to: "[m]aintain regular attendance and be punctual within customary, usually strict tolerances"; "[s]ustain an ordinary routine without special supervision"; "[w]ork in coordination with or proximity to others without being unduly distracted"; "[c]omplete a normal workday without interruptions from psychologically based symptoms"; "[p]erform at a consistent pace without an unreasonable number and length of rest periods"; "[a]ccept instructions and respond appropriately to criticism from supervisors"; "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes"; "[r]espond appropriately to changes in a routine work setting"; "[d]eal with normal work stress"; "[u]nderstand and remember detailed instructions"; "[c]arry out detailed instructions"; "[s]et realistic goals or make plans independently of others"; "[d]eal with stress of semiskilled and skilled work"; "[i]nteract appropriately with the general public"; and "[m]aintain socially appropriate behavior").

The ALJ recognized these questionnaires, but afforded them "[l]ittle weight" because he viewed them as "internally inconsistent." According to the ALJ, "Dr. Simms [sic] assigned a GAF score of 60, which indicates only mild to moderate difficulties, but she endorsed disabling symptoms and limitations[, and] did not explain the inconsistencies in her opinion." Tr. at 31 (June 2013 RFC Qnr.), 32 (March 2014 RFC Qnr.). The ALJ mentioned that, at the first hearing, Dr. Johnson (the non-examining medical expert) testified that Dr. Sims's June 2013 questionnaire "is internally inconsistent because a GAF score of 60 is assigned, which indicates moderate limitations, but the checklist indicates marked limitations of function." Tr. at 32. This one internal inconsistency based on the GAF score is the only basis upon which

the ALJ gave little weight to Dr. Sims's opinions contained in the questionnaires.

In relying on the GAF score, the ALJ did not provide a "good reason" for rejecting Dr. Sims's opinions in the questionnaires. "[T]he Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)); see also Wilson v. Astrue, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009). As a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight when reviewing an ALJ's RFC determination. Indeed, as this Court previously noted, "A GAF score has no direct correlation to social security disability regulations." Robinson v. Colvin, No. 8:14-CV-1533-T-TGW, 2015 WL 12856784, at *4 (M.D. Fla. Aug. 17, 2015); see also Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (citing DeBoard v. Comm'r Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)) (stating that "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity").

In Robinson, this Court held that the ALJ did not err when he failed to refer to the GAF score assigned by a one-time examining physician. Robinson, 2015 WL 12856784, at *4. In so holding, the Court noted that "a single GAF score does not provide solid evidence of a severe mental impairment, especially where . . . it is internally inconsistent with [an examining doctor's] specific opinion." Id. (emphasis added).

Here, the ALJ disregarded Dr. Sims's opinions contained in the questionnaires solely

on the basis that they were inconsistent with the GAF score Dr. Sims assigned. Dr. Sims's GAF score does not constitute "solid evidence" sufficient to override Dr. Sims's "specific opinion[s]." Thus, the ALJ failed to give a "good reason" to assign little weight to Dr. Sims's opinions in the questionnaires, and remand is required for further consideration of the opinions.

## B. Opinion of Commissioner's Expert Examining Physician

Plaintiff argues the ALJ erred in rejecting certain portions of the opinion of Dr. Cometti, the Commissioner's expert examining physician. Pl.'s Mem. 16-22. According to Plaintiff, "Dr. Cometti offered opinions that directly contradict the ALJ's RFC determination and support a determination that the ALJ's finding that [Plaintiff] was not disabled . . . is not supported by substantial evidence." Id. at 20-21. Plaintiff contends the ALJ failed to provide an explanation as to why he ignored these opinions. Id. at 21. Responding, Defendant asserts that "the ALJ's rationale is reasonably discernible and supported by substantial evidence in the form of Dr. Cometti's unremarkable clinical findings," which "did not support or explain [the opinions disregarded by the ALJ.]" Def.'s Mem. at 18.

On July 10, 2013, Dr. Cometti conducted a physical evaluation of Plaintiff. See Tr. at 948-55. At the evaluation, Plaintiff reported that he has a long history of depression, anxiety, and high triglycerides; that he was diagnosed with HIV in 2000; and that he gets asthma attacks once a week. Tr. at 948-49. Plaintiff also stated he "takes care of himself . . . cooks, cleans, and launders[,]" but "claim[ed] lethargy and fatigue often." Tr. at 949. He said he "smok[ed] two packs of [sic] day of cigarettes from 1980 to 2010 . . . and stopped then." Tr. at 949. Dr. Cometti reported that Plaintiff's gait was normal; that he had a normal stance; and

that he did not need assistance getting on the exam table. Tr. at 950. He recommended that Plaintiff avoid "exposure to . . . respiratory irritants" and "avoid activities requiring moderate exertion or greater secondary to fatigue and COPD." Tr. at 952.

Dr. Cometti then completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("Medical Source Statement"). See Tr. at 956-62. He opined that, in an eight-hour workday, Plaintiff could sit a total of eight hours, stand a total of one hour, and walk a total of two hours. Tr. at 957. He concluded that Plaintiff could reach, handle, finger, feel, push, and pull with his upper extremities only "occasionally." Tr. at 958. He also reported Plaintiff could occasionally lift and carry up to fifty pounds. Tr. at 956.

"[T]he ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision." Monte v. Astrue, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009); see also Knoblock v. Colvin, No. 8:14–CV–00646–MCR, 2015 WL 4751386, at *3-4 (M.D. Fla. Aug. 11, 2015) (finding "the ALJ failed to sufficiently articulate her reasons for rejecting portions of [an examining physician's] opinion while accepting others," and remanding because "in the absence of an explanation for reasons for excluding these limita tions, the Court may not draw inferences from the ALJ's discussion to find clarity").

Here, the ALJ gave "[s]ubstantial weight" to Dr. Cometti's physical evaluation of Plaintiff. Tr. at 29. With regard to the Medical Source Statement, the ALJ wrote: "Significant weight is accorded to the finding that [Plaintiff] is able to work. However, to the extent this opinion differs from the [RFC], the undersigned gives it little weight because it is inconsistent with the clinical evaluation." Tr. at 29. The ALJ did not elaborate on this reason.

To the extent the ALJ merely recited a recognized "good cause" reason for discounting a portion of Dr. Cometti's opinion, the ALJ failed to meet the particularity requirement for rejecting an examining doctor's opinion. See Monte, 2009 WL 210720, at *6. This error was not harmless. Dr. Cometti's findings regarding Plaintiff's ability to stand and walk are inconsistent with the ALJ's RFC determination that Plaintiff can perform "light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) . . . ." Tr. at 26. The undersigned finds that one hour of walking and two hours of standing do not constitute "a good deal of walking or standing" as required by 20 C.F.R. § 404.1567(b). See SSR 83-10, 1983 WL 31251 at *6 (stating that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time").

Dr. Cometti's opinion on Plaintiff's limited ability to use his upper extremities is inconsistent with the ALJ's RFC determination that Plaintiff can perform certain past relevant work. At the supplemental hearing, Plaintiff's counsel examined Ms. Brooks, a VE, with regard to Plaintiff's limitations in using his upper extremities. Specifically, Plaintiff's counsel asked: "We would add to the hypothetical [that the ALJ gave] that the individual can occasionally and bilaterally . . . reach overhead and all other directions, and also handle, finger, feel, and push and pull. Would that have any impact on the past relevant work?" Tr. at 75. Ms. Brooks responded that such restrictions "would eliminate all of the titles from the past relevant work." Tr. at 75. Thus, the ALJ's failure to explain why he disregarded these portions of Dr. Cometti's opinions constitutes reversible error.

Without sufficient explanation by the ALJ as to why he rejected certain portions of Dr. Cometti's opinion, the undersigned is not able to determine whether the reasons for rejection are supported by substantial evidence. While Defendant attempts to explain the inc onsistencies between Dr. Cometti's evaluation and the Medical Source Statement, see Def.'s Mem. at 18, the ALJ does not provide any explanation. Because the ALJ failed to sufficiently explain his decision, the undersigned "decline[s] . . . to affirm simply because some rationale might have supported the ALJ's conclusion." Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).[9] Accordingly, remand is required on this issue. On remand, the Commissioner is directed to provide an explanation for rejecting particular portions of Dr. Cometti's opinion.

## C. RFC Absent Consideration of Substance Use

Plaintiff contends that the ALJ "erred by failing to recognize that [Plaintiff's] depression and anxiety, without consideration of any impact from his alcohol and or [sic] marijuana use, significantly impacted [] his ability to work." Pl.'s Mem. at 23. Plaintiff argues that the ALJ did not explain why "[Plaintiff's] depression and anxiety were no longer severe after elimination of any consideration of his alcohol or marijuana use." Id. In response, Defendant asserts that "the ALJ properly discussed relevant evidence in assessing Plaintiff's mental [RFC] without substance abuse, including Plaintiff's longitudinal mental health treatment history, the medical opinions, and Plaintiff's own reports of his symptoms and functioning." Def.'s Mem.

---

[9] Further, while the ALJ gave "[s]ignificant weight . . . to the finding that [Plaintiff] is able to work," Dr. Cometti made no such finding in the Medical Source Statement. See generally Tr. at 956-62. He completed a questionnaire composed of checklists, but he made no finding that Plaintiff "is able to work." The undersigned is thus unable to determine what portion of the opinion was given significant weight.

at 7. Specifically, Defendant points to the opinions of Dr. Johnson and the state agency consultants (Dr. Angeles Alvarez-Mullin and Dr. Lee Hudson). Id. at 7-9.

The ALJ found that "[i]f [Plaintiff] stopped the substance use (alcohol abuse) [Plaintiff] would have the [RFC] to perform light work," Tr. at 26, and some "past relevant work," Tr. at 33. In making these findings, the ALJ relied on: 1) Dr. Johnson's opinion and testimony at the first hearing; 2) a few physical exams done at the Rainbow Center Adult Clinic ("Rainbow Center"); 3) the opinions of four consultants; 4) portions of Dr. Cometti's opinion; 5) the opinion of Dr. Allison Keiter (a non-treating examining psychologist); and 6) Plaintiff's ability to perform certain activities of daily living. See Tr. at 26-33.

Dr. Johnson, who is a psychiatrist, testified at the first hearing as a non-examining medical expert. See Tr. at 44-51. At the hearing, the ALJ asked Dr. Johnson the following question: "If [Plaintiff] had stopped drinking alcohol, 12 beers a day, back in 2008 what improvement would he have seen in his conditions, minimal, moderate, or significant, in your opinion?" Tr. at 47. Dr. Johnson answered: "There would have been an improvement in his depression and anxiety. . . . I would say it would be a significant improvement." Tr. at 47. On November 26, 2013, Dr. Johnson completed a Medical Interrogatory, which included an RFC questionnaire. See Tr. at 977-79. In responding to the questionnaire, he opined Plaintiff was "[a]ble to perform . . . with no observable limitations" every task or function listed, Tr. at 977-79, including the tasks or functions Dr. Sims had indicated Plaintiff was unable to perform, see Tr. at 937-38, 991-92. The ALJ afforded this opinion "[s]ignificant weight" on the basis that it is "consistent with the totality of the evidence, which documents that [Plaintiff] has only mild symptoms when he is abstaining from alcohol use." Tr. at 32.

On August 17, 2009, Plaintiff presented to the Rainbow Center for the first time. See Tr. at 821-23. He has had several appointments and laboratory tests there since then. See Tr. at 773-827, 874-934. The ALJ discussed some of Plaintiff's visits to the Rainbow Center. See Tr. at 28 (stating that "[o]n May 10, 2011, . . . [Plaintiff] said his energy level had improved since he decreased his alcohol consumption. . . . [O]n August 29, 2012, [Plaintiff] said he was not using alcohol. . . . [O]n September 18, 2012[,] . . . [Plaintiff] said his depression was controlled with medications").

On January 19, 2012, Dr. Keiter, the non-treating examining psychologist, conducted a psychological evaluation of Plaintiff. See Tr. at 757-761. Plaintiff "described symptoms such as crying spells, fatigue, irritability, and mood swings[,]" "report[ed] taking one to two naps a day[,]" and said "his last use of alcohol was six months [before this evaluation]." Tr. at 757-58. Dr. Keiter reported that "[Plaintiff's] manner of relating, social skills, and overall presentation was adequate" and that "he is able to dress, bathe, [] groom himself . . . cook, clean, do laundry, [] manage small amounts of money[,] and driv[e] independently." Tr. at 758-59. At the evaluation, Plaintiff "listed his activities as 'piddling on the computer,' taking a nap, and doing some light housework, but at a slow pace due to fatigue." Tr. at 759. Dr. Keiter assigned a GAF score of 68. Tr. at 760. The ALJ gave "[s]ubstantial weight" to the GAF score, but stated: "[L]ittle weight is accorded to the mental limitations assigned because they are inconsistent with [Plaintiff's] independence in activities of daily living, ability to manage his medical, legal and financial affairs, and the limitations are inconsistent with [Plaintiff's] participation in training to become a cruise specialist." Tr. at 30.

The ALJ discussed the findings of four consultants who reviewed the medical records. The ALJ stated that Dr. Alvarez-Mullin and Dr. Hudson both found that Plaintiff has non-severe substance addiction, affective, and anxiety disorders with mild limitations "in activities of daily living, social functioning and concentration, persistence and pace." Tr. at 30 (Dr. Alvarez-Mullin), 31 (Dr. Hudson). The ALJ gave the opinions "[s]ignificant weight because [they are] consistent with [Plaintiff's] ability to interact effectively with medical personnel [and] . . . manage his medical, legal and financial affairs." Tr. at 30 (Dr. Alvarez-Mullin), 31 (Dr. Hudson). Dr. Donald Morford and Dr. Loc Kim Le "reviewed the medical evidence of record and concluded [Plaintiff] could perform a reduced range of light work." Tr. at 29. The ALJ afforded these opinions "[s]ignigicant weight . . . because [they are] consistent with the treatment records, which mostly show normal physical exams." Tr. at 29.

"The opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987); see also Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir.1985) (stating that "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision"). Dr. Johnson's opinion is the only one that indicates Plaintiff can perform light work absent alcohol abuse. While, as the ALJ points out, the May 10, 2011 Rainbow Center records indicate Plaintiff reported having "decreased drinking behaviors" and an "increase in energy level," Tr. at 796; see Tr. at 28, there are no other medical records reporting that Plaintiff has high energy levels when he is not drinking, see generally administrative transcript. Indeed, the medical record evidence overwhelmingly supports the contention that Plaintiff's energy levels have been consistently low, even after

he stopped using alcohol.[10] Dr. Sims constantly reported that "[Plaintiff's] energy was low." See, e.g., Tr. at 986 (February 7, 2014 note), Tr. at 983 (November 1, 2013 note), Tr. at 980 (August 2, 2013 note), Tr. at 941 (May 3, 2013 note). On January 19, 2012, Dr. Keiter reported that Plaintiff indicated he was experiencing such severe fatigue that he had to take one to two naps a day. Tr. at 757-58.[11] On November 13, 2012, Plaintiff reported to the Rainbow Center that he was "still experiencing fatigue throughout the day." Tr. at 921. Dr. Johnson's opinion is directly contrary to Dr. Sims's opinion that Plaintiff's use of alcohol had no impact on Plaintiff's condition. See Tr. at 939. Thus, Dr. Johnson's opinion "standing alone [does] not constitute substantial evidence." Sharfarz, 825 F.2d at 280.

With regard to Plaintiff's ability to perform certain activities of daily living, the ALJ found the following:

> [W]hen Plaintiff is abstinent from alcohol abuse, he is independent in activities of daily living. He is able to maintain relationships with his mother, siblings and his long-term partner. [Plaintiff] is able to drive, shop and manage money. [Plaintiff] testified that he uses a computer. [Plaintiff] told Dr. Simms [sic] that he was taking a class to become a cruise specialist. These activities are consistent with the finding that [Plaintiff] has no severe impairments when he is abstaining from alcohol use.

Tr. at 33. The ALJ merely made the conclusory statement that Plaintiff can perform these activities when he is not using alcohol. The ALJ did not point to any evidence to support this statement. Absent a discussion of such evidence, the undersigned is unable to determine

---

[10]     According to the medical records, Plaintiff stopped drinking alcohol on September 1, 2011, see Tr. at 762, and has not drunk alcohol since then, see Tr. at 937, 964-69, 980-88.

[11]     At the supplemental hearing, Plaintiff's counsel asked the VE, Ms. Brooks, the following: "If . . . because of complaints of fatigue or other symptoms, [an] individual would require the need to [] lie down for one to two hours in any eight-hour time period, what impact would that have on the ability to [work]?" Tr. at 76. The VE answered: "That would eliminate . . . all jobs." Tr. at 76.

whether "[t]hese activities are consistent with the finding that [Plaintiff] has no severe impairments when he is abstaining from alcohol use." Tr. at 33. This is significant because the ALJ found that "based on all impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 24 (emphasis added).

Notably, Plaintiff's statement to Dr. Sims that Plaintiff was taking a class to become a cruise specialist was made before Plaintiff stopped using alcohol. See Tr. at 768. The day he made that statement he also reported going "on binges for a few days drinking all day long until he black[ed] out." Tr. at 768. Indeed, the medical record evidence shows Plaintiff's condition has remained relatively unchanged since he stopped drinking on September 1, 2011. See, e.g., Tr. at 921 (November 13, 2012 note indicating Plaintiff is "still experiencing fatigue throughout the day"), Tr. at 941 (May 3, 2013 note indicating Plaintiff "[had] a rage outburst with his family during which he was yelling and felt that his anger was out of control"), Tr. at 980 (August 2, 2013 note indicating "[Plaintiff's] main concern is anxiety in regards to his relationship with his partner"), Tr. at 758 (January 19, 2012 note indicating Plaintiff is "easily mentally fatigued" and is "taking one to two naps a day"), Tr. at 768 (July 23, 2010 note indicating Plaintiff had "low energy"), Tr. at 941, 944, 986 (notes reporting low energy levels in 2013 and 2014). Thus, the undersigned is unable to determine whether there is substantial evidence to support the finding that Plaintiff has no severe impairment when he is not drinking alcohol. Accordingly, remand is required to reconsider whether alcohol is a contributing factor material to the disability determination.

### VI. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

      (A)     Reevaluate the opinions of Dr. Sims and Dr. Cometti, stating with particularity the weight assigned and the reasons for that weight;

      (B)     Reconsider whether alcohol use is a contributing factor material to the determination that Plaintiff is disabled; and

      (C)     Take such other action as may be necessary to resolve this matter properly.

2.     The Clerk is further directed to close the file.

3.     In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on August 22, 2017.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of record